**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-Cr-20158-JAL**

**UNITED STATES OF AMERICA**

**vs.**

**ADALBERTO PEREZ,**

**Defendant.**
_____/

**FACTUAL PROFFER**

The parties agree that the government would have proved at trial these and other facts beyond a reasonable doubt.

On March 1, 2015, a TransValue, Inc. truck left the Southern District of Florida for the purpose of transporting gold and silver on behalf of Republic Metals Corporation to a Massachusetts company. The truck was occupied by one driver and one passenger (Victim 1 and Victim 2, respectively), both employees of TransValue. At approximately 6:50 p.m., Roberto Cabrera, Adalberto PEREZ and a third conspirator caused the truck to pull off of the north bound lanes of Interstate 95 in North Carolina, where two of them brandished firearms at Victim 1 and 2, bound their hands behind their backs, and took approximately $5,000,000.00 in precious metals.

Cabrera, PEREZ and the third conspirator conspired, planned and agreed together, and with others known and unknown, to commit this crime long before March 1, 2015. In the planning phase, the conspirators learned about the pattern of movement of gold from Republic Metals into the custody of TransValue. Likewise, the conspirators learned the pattern of

movement of the TransValue trucks carrying the gold. The conspirators obtained and affixed a tracking device to a TransValue truck, which they were able to monitor. In addition, the conspirators obtained parts that they were able to assemble into a remote controlled device that would simultaneously disable a vehicle and release a noxious gas from a canister into the truck's cabin through a tube inserted into a hole drilled into the cabin floorboard. This contraption was installed on the TransValue truck and was equipped to function by remote control.

The conspirators obtained a nondescript rental van and modified it by installing a large container of gasoline into the bed of the vehicle and running a tube from that container through a hole drilled into the floor of the van that then fed into the gas tank. Thus, the conspirators were able to travel without the need to stop for refueling.

The conspirators planned and agreed to use firearms to subdue Victims 1 and 2 by causing them fear in order to obtain compliance. They obtained firearms for this purpose.

On March 1, 2015, the conspirators, armed with at least two firearms, followed the TransValue truck in the aforementioned van from Miami-Dade County in the Southern District of Florida as it traveled north toward Massachusetts. The conspirators remote activated the disabling device, which simultaneously released a noxious gas into the truck's cabin. Victim 1 pulled the truck off of I-95 in North Carolina. The conspirators stopped their van near the TransValue truck and the conspirators exited the van. All were armed with the previously mentioned firearms. Two conspirators each brandished their firearms, placed Victim 1 and 2 in well-founded fear, and obtained their compliance. Their hands were bound behind their backs and made to walk into the brush. The conspirators entered the TransValue truck and offloaded gold bars and silver plugs (coin shaped) into the white van. They then made good their escape.

2

Upon returning to the Southern District of Florida, the conspirators evenly divided the gold and subsequently began the process of breaking it down for sale and selling it.

All the planning for this crime occurred in the Southern District of Florida. The preparation to execute this plan, including, but not limited to, affixing the trackers to the vehicle, tracking the vehicles to learn patterns, assembling the disabling device, experimenting with it and affixing same to the vehicle, all occurred in the Southern District of Florida.

Republic Metals and TransValue are companies that operate in and affect interstate commerce. The Massachusetts company that was supposed to receive the TransValue shipment also operates in and affects interstate commerce. Lloyds of London, an insurance company that paid for the loss of the gold, is a company operating in and affecting interstate and foreign commerce. The robbery of the gold and silver affected interstate commerce.

_____  6·29·16
Michael E. Gilfarb        Date
Assistant United States Attorney

_____  6/29/16
William Barzee            Date
Attorney for Roberto Cabrera

_____  6/29/16
Adalberto Perez           Date
Defendant

3